**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**SHAWANNA NELSON**                                                **PLAINTIFF**

**VS.**                              **NO. 1:04CV00037**

**CORRECTIONAL MEDICAL SERVICES et al**                    **DEFENDANT**S

## CONSOLIDATED BRIEF IN SUPPORT OF RESPONSES TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

## INTRODUCTION

The Arkansas Department of Corrections Defendants ("ADC") and Correctional Medical Services ("CMS") have each filed motions for summary judgment. The issues raised include respondeant superior, qualified immunity, failure to exhaust administrative remedies, and Eight Amendment violations by the defendants against Shawanna Nelson, the Plaintiff. Each is addressed below.

## I. LEGAL STANDARD FOR SUMMARY JUDGMENT

Motions for Summary Judgment are controlled by Fed.R.Civ.P. 56(c). To successfully oppose a motion for summary judgment, the nonmoving party must present evidence of a genuine dispute of material fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). The nonmoving party must present admissible evidence from which a reasonable jury could return a verdict in its favor. This requires more than a scintilla of evidence, and there must be specific facts set forth showing that there is a genuine issue for trial. *Davis v. Fleming Cos., Inc*., 55 F.3d 1369, 1371 (8th Cir. 1995). In this case, there are fact issues to be decided, and upon which reasonable minds could differ. Courts must not deprive juries from their role in deciding genuine

disputes of material fact. *Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 289 (8th Cir. 1988). There are several disputes of material fact upon which reasonable minds could differ in the present case.

## II. EIGHTH AMENDMENT VIOLATIONS: CRUEL AND UNUSUAL PUNISHMENT; DELIBERATE INDIFFERENCE

No fetal monitor was used by CMS at Arkansas Department of Correction. Mary Matthews ("MM") Deposition. p.15. Nurse Matthews, who worked at the medical unit of the McPherson Womens Unit of the ADC, had no special training in the monitoring of pregnant patients. MM p. 9. No doctor examined Plaintiff when she presented to the medical unit in labor. MM p. 10. Nurse Matthews measured Plaintiff's contractions only by placing her hand on Plaintiff's stomach. MM p. 12. The unit was equipped with no special equipment for checking pregnant women. MM. p.14,15. She does not know how often she checked Shawanna Nelson during the time Ms. Nelson was at the unit. MM p.16. Ms. Nelson had arrived at the medical unit around noon. MM p.15.

Ms. Nelson was an extremely quiet, very nice pregnant inmate. Hazel Dee Smith Deposition ("HDS") p. 7. Her contractions went quickly to five minutes apart or less. HDS p. 8. Nurse Smith was hollering to people at the sally port to get the Plaintiff out of the prison and to the hospital quickly. HDS p. 9. Plaintiff was hurting. HDS p. 10. From the medical unit to the sally port (approximately three quarters of a football field), Nurse Smith had to stop walking with plaintiff and "go the wall" for her to have a contraction. This happened at least twice. HDS. Pp. 11-12. Nurse Smith cannot check a pregnant inmate for the progression of her labor in any way other than to physically touch her stomach and to time contractions with a

watch - not a stopwatch.  HDS p. 12.  No pelvic examination is done on pregnant women at the unit.  There is no fetal monitor at the unit.  HDS p. 14.

Patricia Turensky ("PT") is an employee of the ADC.   PT p. 5.  She is a guard with no medical training and no special training in childbirth and delivery.  PT p. 8.  In fact, while Plaintiff was obviously pregnant, PT. P 15, Officer Turensky claims not to have known why she was taking Plaintiff from the prison to the hospital.  PT p. 14 - 16.  She took handcuffs and leg restraints with her because it is ADC policy, and she had been told to do so by Officer Linda Dixon.  PT p. 17.  She had no knowledge of the crimes for which Plaintiff was serving her time PT pp. 17-18, nor any knowledge or concern that Plaintiff was a flight risk.  PT p. 21.  (Ms. Nelson was in prison for the nonviolent crimes of credit card fraud and hot check violations). Shawanna Nelson Deposition ("SN") p. 8).

Officer Turensky has doubts that Ms. Nelson posed any flight risk.  Her common sense tells her not to shackle a pregnant inmate, and she never felt threatened by Ms. Nelson.  PT p. 26.  Ms. Nelson was not belligerent or physical with her.  PT p. 27.  She used the restraints on Ms. Nelson because it was ADC policy, and she did not want to be written up.  PT p. 24.  Even though she has to abide by ADC policy, she does not believe it is a good policy.  After inmates have babies, they will be shackled again, and that is bothersome to her.   The shackles are not even sanitary.  PT pp. 42-43.

Ms. Nelson knew when she went into labor, having given birth once before, in 1993.  SN p.9.  That delivery was uncomplicated, and her labor lasted about three hours.   SN p. 10.   On September 20, 2003, she went into labor, and she knew it.  SN p. 20.  She tried to report for her work assignment, but could not work due to her pain.  SN 19.  When finally she arrived at the

medical unit (about noon, MM p. 15), the nurses checked her vital signs, then she was left alone for the most part. SN pp. 23-24.

Her contractions were not timed. SN p.29. Her labor was very intense. SN p.35. Her trip to the hospital took 10-15 minutes. Upon her arrival at the hospital, she was already dilated to a 7. SN p. 37. She was handcuffed, and her legs were restrained by shackles to the bedposts. SN p. 39-41. She would temporarily be uncuffed and unshackled for the checking of her vital signs. The leg shackles were removed only in the delivery room, but they were replaced after delivery. SN pp. 44-45. Never was she given any pain medicine. SN pp. 47-49. She suffered, in addition to her humiliation as described in her grievances, an umbilical hernia from straining to deliver her large baby, and an injury to her hips. SN pp. 55-63.

It is inherently dangerous to both the mother and the fetus for a woman to experience the final stages of labor in shackles, for several medical reasons. (See attached Affidavit of Dr. Cynthia Frazier, M.D.). The ADC's policy, as implemented and followed by both ADC and CMS, was inherently dangerous to Ms. Nelson and to her unborn baby. (See Affidavit of Dr. Cynthia Frazier).

### III. RESPONDEAT SUPERIOR, IMMUNITY, AND FAILURE TO EXHAUST ISSUES

These issues have been previously raised by the Defendants, and previously ruled upon in Plaintiff's favor. On January 14, 2005, the Magistrate Judge issued his Proposed Findings and Recommended Partial Disposition, ruling in Plaintiff's favor. No objections were made to those findings, and they were adopted by this Court on January 31, 2005. On January 4, 2006, the Magistrate Judge addressed these issues again, and again ruled in Plaintiff's favor. No objections

were made to those findings, and they were adopted by this Court on January 20, 2006. Each set of findings and each order is attached, and incorporated here as if set forth word for word.

These issues have now been settled in Plaintiff's favor by The Law of the Case Doctrine. The law of the case doctrine dictates that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Kinman v. Omaha Pub. Sch. Dist., 171 F.3d 607, 610 (8th Cir. 1999) (citing Republican Party of Minnesota v. White, 361 F.3d 1035 (8th Cir. 03/16/2004)

Additionally, since those findings were made and adopted without objection by this Court, discovery in this case has developed further proof that both CMS and the ADC Defendants are liable for Ms. Nelson's damage.

The ADC contracts with CMS for its medical services. Portions of that contract are attached to this brief. Among other things, CMS must deliver services that comply with the law. (Health Services Agreement ("HSA") p. 7. When CMS wants to implement something new, it must submit a plan to the ADC for prior approval. HSA p.13. ADC has some supervisory control over CMS employees. HSA p.25.

ADC has the power to change the scope of the contract. HSA. p. 37. It is the ADC who has final authority on any unresolved issues between ADC and CMS. CMS shall report to ADC. HSA. p. 46. Changes proposed by CMS must be reviewed and approved by ADC's Administrator of Medical Services and its lawyer. HSA. p. 47. The relationship between the two Defendants is an incredibly intertwined one, and neither can divorce itself from the other concerning policies relative to ADC inmates.

Max Mobley is now retired from the ADC. At the time of Ms. Nelson's delivery of her son in September of 2003, he was the Department's Deputy Director of Health and Correctional Services which included medical services. ("MM") p.6. He is not, however, a medical doctor. Max Mobley Deposition ("MM") p.7. He has no training in labor and delivery. MM. P.14. He does not know what the "final stages of labor" are. MM.p.20.

The connection between the ADC and CMS is described by Dr. Mobley as financially motivated. ("MM") p. 21 -22. ADC has oversight over CMS, and if CMS does not comply with ADC policies, the contract can be terminated. MM depo p.20.

Larry Norris is the Director of the Arkansas Department of Corrections. (Larry Norris' Deposition, ("LN") p.4. The restraint policies that were in effect when Ms. Nelson delivered her baby occurred on his watch LN dep p.12. Nobody in his crew is a medical doctor LN depo p.7.

## CONCLUSIONS

There are multiple issues upon which reasonable minds could differ in this matter. The case should not be dismissed against anybody for Plaintiff's Eighth Amendment violations. Even an officer of the ADC charged with the implementation of its restraint policies finds them wrong and unsanitary. No medical doctor was in charge of the policies or of their implementation. They are medically dangerous to both the pregnant inmate and to her baby.

The issues of failure to exhaust administrative remedies and of respondeat superior have been previously decided in Plaintiff's favor, and are the law of the case.

The motions for summary judgment are not proper under the facts of this case or of the law which controls summary judgment, and should be denied in their entirety.

Respectfully Submitted,

*/s/ Cathleen Compton*
Catheen V. Compton, 85031
DUDLEY & COMPTON
114 S. Pulaski Street
Little Rock, AR 72201
(501) 372-0080
cathi.compton@sbcglobal.net

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been mailed this 4th  day of January, 2007 , to Christine Boozer, Assistant Attorney General, 323 Center Street, Suite 1100, Little Rock, AR., 72201, and Alan Humphries, Humphries & Lewis, P.O. Box 9068, Pine Bluff, AR 71611.

*/s/ Cathleen Compton*
Cathleen V. Compton