IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

SHAWANNA NELSON                                                                    PLAINTIFF

v.                                    No. 1:04CV00037 JJM

CMS, ET AL.                                                                        DEFENDANTS

## ADC DEFENDANTS OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS (DE 88)

Come now the Arkansas Department of Correction (ADC) Defendants, Larry Norris, Max Mobley, and Patricia Turensky, by and through their attorneys, Attorney General Dustin McDaniel and Assistant Attorney General Christine A. Boozer, and for their Objections to Proposed Findings and Recommendations, respectfully state as follows:

## INTRODUCTION

On May 25, 2007, Magistrate Judge Cavaneau issued his Partial Proposed Findings and Recommendations in which he recommended, in part, the following: (a) ADC Defendants Motion to Deem Admitted their Statement of Undisputed Material Facts be denied; and (b) Plaintiff's claim for either deliberate medical indifference or cruel and unusual punishment arising from restraining Plaintiff be allowed to proceed to trial as to separate ADC Defendants Larry Norris and Patricia Turensky. ADC Defendants respectfully object to this Court's finding that material issues of fact remain as to these issues.

# ARUGMENT

## I.  The Court Erred in Not Granting ADC Defendants Motion to Deem Admitted their Statement of Material Facts.

On November 22, 2006, the Separate ADC Defendants filed a Motion for Summary Judgment, Brief in Support, and a Statement of undisputed Material Facts as required by Local Rule 56.1. On January 4, 2007, Plaintiff filed a response to Separate ADC Defendants motion; however, she did not file a response to Separate ADC Defendants statement of indisputable facts.

Local Rule 56.1 of the Rules of the United States District Court for the Eastern District of Arkansas states:

> In addition to the requirements set forth in Local Rule 7.2, the following requirements ***shall*** apply in the case for motions for summary judgment.
>
> (a) Party moving for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, ***shall*** annex to the notice of motion a separate, short and concise statement of the material facts as to which it contends there is no genuine issue to be tried.
> (b) If the non-moving party opposes the motion, it ***shall*** file, in addition to any response and brief, a separate, short and concise statement of the material facts as to which it contends a genuine issue exists to be tried.
> (c) All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) ***shall be deemed admitted*** unless controverted by the statement filed by the non-moving party under paragraph (b). (Adopted and effective March 14, 1984).

In it's Proposed Findings, the Court stated that because the December 13, 2006 order, which allowed Plaintiff to file a separate response to each summary judgment motion but permitted her to file a consolidated brief, was silent as to filing a separate statement of facts, she should not now be prejudiced for her failure to do so. Defendants respectfully disagree with this analogy.

2

Clearly, Local Rule 56.1(c) requires the non-moving party to controvert the facts submitted by the party who files a motion for summary judgment. In fact, Rule 56.1 states the non-moving party to a motion *shall* file a separate, short and concise statement of the material facts as to which it contends a genuine issue exists. The Rule places the burden upon the parties to comply. Whether the December 13, 2006 specifically instructed the Plaintiff as to responding to the Statement of Material Facts, the Rules compelled her to do so, and she failed to do it. Because plaintiff failed to comply with Local Rule 56.1, ADC Defendants Statement of Undisputed Material Facts should be deemed admitted.

## II. The Court Erred in Not Dismissing the Claim Arising from Restraining Plaintiff

A. **Larry Norris Should be Dismissed as a Party Defendant.**

1. The ADC Policies and Procedures Regarding Pregnant Female Inmates Were Implemented and are Constitutional

In her Amended Complaint, Plaintiff alleges ADC Defendants Larry Norris violated her constitutional rights by failed to see to it that "proper policies and customs" were implemented to protect inmates in labor. During the Plaintiff's incarceration, the ADC had in place a variety of policies and procedures which had been approved by the Arkansas Board of Correction and implemented department-wide. With regard to the use of restraints such as handcuffs, security belts and leg irons, the Board of Correction originally adopted policies beginning in 1979. Larry Norris was not the ADC's Director in 1979. The policy, or Administrative Regulation, pertaining to restraints is AR 403. AR 403 details the purpose of the policy, the applicability of the policy, defines the policy as well as the procedures to be followed in applying said policy. With regard to

the procedures, AR 403 states that restraints may be used when escorting/moving inmates. The need for said policy is clearly one of security.

With regard to transporting inmates, the ADC also has in place an Administrative Directive 95-21, which references AR 403, and relates to the organizations responsibilities for transporting inmates. According to AD 95-21, inmates are to be placed in restraints when transported outside an ADC unit. Administrative Regulations are approved by the Board of Correction. Prior to said approval, they are reviewed by the Legislature. Once the Board has given its approval, the ADC management team implements directives to carry out the AR's.

In addition to Administrative Directives and Regulations, each unit of the ADC may implement Post Orders which outline procedures for a variety of activities. One such Post Order at the Newport Complex is the Hospital Security Post Order. The Hospital Security Post Order provides special instructions on how and when inmates are to be transported to the hospital, as well as the use of restraints and firearms for the use of officers upon leaving the unit. The Post Order, effective in 2003, stated that all inmates leaving the unit were to be in restraints. Reference was also made to pregnant inmates, and read as follows: "Pregnant inmates in the final states of labor will not be restrained *while in the delivery room giving birth, or at any time the physician in charge determines that such application would be a health risk to the unborn child or the health of the inmate*." (Emphasis added).

In looking at Plaintiff's First Amended Complaint, she alleges Larry Norris "failed to see that proper policies and customs are implemented with respect to restraints of female inmates who are in labor." (See Amended Complaint, ¶ 10). Defendants

4

presented evidence that the Department of Correction has policies and procedures in place with regard to the handling and caring for pregnant female inmates. Plaintiff has, to this day, not offered any facts or evidence to refute the Defendants evidence. The most the Plaintiff can do is to say she didn't like them, but not liking a policy and establishing that a policy is unconstitutional is completely different. Defendants met their burden. When the burden shifted to the Plaintiff to rebut the evidence presented by the ADC Defendants she could not do so. Plaintiff's claim that Larry Norris failed to see that proper policies and customs are implemented with respect to restraints of female inmates who are in labor should be dismissed.

2. The Court Erred in Holding the Plaintiff Had Raised a Claim For Deliberate Medical Indifference or Cruel and Unusual Punishment; and, Further, That Such a Claim Should Proceed to Trial.

In the Proposed Findings and Recommendations, the Court stated that whether the claim regarding the Plaintiff's legs being shackled (whether characterized as deliberate medical indifference or cruel and unusual punishment) should be allowed to proceed to trial. (DE 68, p. 19). ADC Defendants respectfully disagree with the Court.

The Court, in its Proposed Findings, detailed the standard necessary in order to prevail on a deliberate medical indifference claim. As the Court stated, the Plaintiff must establish that she suffered from an objectively serious medical need. A medical need is "serious" if it has been diagnosed by a physician as mandating treatment or if it is so obvious that even a lay person would recognize the necessity for a physician's treatment, *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997); *see also Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999). Next, and more important to ADC Defendant Norris' argument, Plaintiff must establish that Defendants were (1) personally aware of her

5

serious medical needs; and (2) deliberately disregarded those needs. *Coleman*, 114 F.3d at 785-86.

Further, if a claim of medical indifference is to succeed, it must be brought against the individual[s] directly responsible for the inmate's medical care. *Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997) (citing *Kulow v. Nix*, 28 F.3d 855, 858 (8th Cir. 1994)). An official who was not involved in treatment decisions made by the unit's medical staff and who lacks medical expertise cannot be held liable for the medical staff's diagnostic decisions. *Keeper*, 130 F.3d at 1314. Furthermore, a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability. *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). *See also Keeper,* 130 F.3d at 1314; *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987).

The Court, in its Proposed Findings and Recommendations, properly recommended that CMS, as well as Dr. Max Mobley, be dismissed as party defendants after determining they could not be held liable for deliberate indifference. Clearly, Larry Norris should be afforded the same analysis.

Plaintiff has not made any assertions that Defendant Larry Norris was in any way responsible for or even involved in her medical care. Further, Plaintiff does not even allege that Defendant Norris was aware of who she was, that she was pregnant, or when she went into labor. Those individuals who were responsible for her medical care were the employees of CMS, as well as Dr. Hergenroeder, Plaintiff's OB-GYN (who Plaintiff opted not to sue). Defendant Norris should not be held liable under the theory of deliberate medical indifference.

The issue of whether a violation of the Eighth Amendment occurred is a mixed question of fact and law. *Porth v Farrier* 934 F.2d 154, 156 (8th Cir. 1991). "Any constitutional deprivation must demonstrate egregious conduct by the state official to sustain such a finding." *Id*. Once a plaintiff establishes that he has been deprived of his constitutional rights plaintiff must next show factually that defendants' conduct was so egregious as to require compensatory damages. *Id*.

Additionally, after incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). Where a prison security measure is undertaken, the question of whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort, or maliciously and sadistically for the very purpose of causing harm.

It is undisputed that ADC Defendant Larry Norris was not present at the McPherson Unit on the day Plaintiff went into labor; nor was he present at the hospital when Plaintiff arrived, or anytime during her labor and delivery. Officer Patricia Turensky is the officer who was with the Plaintiff at the hospital and was the one responsible for removing the Plaintiff's restraints. There has been no allegation that Officer Turensky and Defendant Norris were in contact while the Plaintiff was at the hospital. The Plaintiff has not presented any facts or evidence that ADC Defendant Larry Norris was personally involved in the decision as to when to remove the restraints from Plaintiff on September 20, 2003.

In her deposition, the Plaintiff testified that she was suing Larry Norris because he is the director. He's responsible for the actions of his officers. (Nelson deposition, p. 93).

She stated that she has never spoken personally with Larry Norris, nor has she ever corresponded directly with Larry Norris. (Nelson deposition, p. 93). Clearly, Plaintiff does not allege any personal involvement on behalf of Larry Norris as to the decisions that were made by the female officer who was physically present at the hospital with the Plaintiff in Newport, AR.

An essential allegation in stating a valid claim under § 1983 is that the defendants have actual and direct involvement in the acts that form the basis of a lawsuit. *Glick v. Sargent*, 696 F.2d 413 (8th Cir. 1983). In order to state a claim against a particular defendant, a plaintiff must allege that the defendant either personally participated in, or had knowledge of, a particular act that deprived the plaintiff of a constitutionally protected right. *See Rizzo v. Goode*, 423 U.S. at 362 (1976). A general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability. *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). *See also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997); *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987). "[S]omething more must be shown than merely the existence of the supervisor-subordinate relationship." *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994) *quoting Clay v. Conlee,* 815 F.2d 1164, 1170 (8th Cir. 1987).

Any claim Plaintiff is believed to have as to Defendant Larry Norris with regard to deliberate medical indifference or cruel and unusual punishment is barred by the doctrine of Respondeat Superior; therefore, it must be dismissed.

**B.** **<u>Patricia Turensky should be dismissed as a party defendant.</u>**

In its Proposed Findings and Recommendations, the Court recommended that the Plaintiff's labor and childbirth claims as to ADC Defendant Patricia Turensky should be

allowed to proceed to trial. With all due respect, ADC Defendants object to this proposed finding as well.

1.  <u>The Court Erred in Stating the Plaintiff Had Raised a Claim For Deliberate Medical Indifference or Cruel and Unusual Punishment; and, Further, That Such a Claim Should Proceed to Trial.</u>

With regard to the policies and procedures established and implemented by the ADC, correctional officers are expected to follow not only the Administrative Regulations and Administrative Directives, but they are to follow Post Orders, which outline procedures for a variety of activities. One such Post Order at the Newport Complex is the Hospital Security Post Order. The Hospital Security Post Order provides special instructions on how and when inmates are to be transported to the hospital, as well as the use of restraints and firearms for the use of officers upon leaving the unit. The Post Order, effective in 2003, stated that all inmates leaving the unit were to be in restraints. Reference was also made to pregnant inmates, and read as follows: "Pregnant inmates in the final states of labor will not be restrained **while in the delivery room giving birth, or at any time the physician in charge determines that such application would be a health risk to the unborn child or the health of the inmate.**" (Emphasis added). (A copy of this Port Order was attached to ADC's MSJ as Ex. M).

In her deposition, the Plaintiff testified as follows:

Q: Now, when he (Dr. Hergenroeder) arrived did he make any comment about the shackles?

A: Told her to take them off.

Q: Did she?

9

A: Yes.

Q: And was that before you were moved to into the delivery room?

A: Yes.

(Nelson deposition, p. 44).

Plaintiff further testified, with regard to Defendant Turensky, as follows:

Q: And I think you also testified that whenever the nurse would come to check you to see how far you had dilated either she would ask the officer to remove the leg restraints or the officer would remove the leg restraints?

A: She would ask the officer to remove the leg restraints.

Q: Okay. And at that time, would the officer remove them?

A: Yes.

(Nelson deposition, p. 81).

Further, Plaintiff testified that:

Q: Did you ask her to remove the restraints?

A: Yes.

Q: Okay. Did she respond when you asked her to remove them?

A: She said she couldn't - - she couldn't remove them.

Q: Did she say any other reason as to why she wouldn't remove them?

A: No.

(Nelson deposition, p. 86)

Also, Plaintiff testified as follows:

Q: And with regard to not removing the leg restraints while you were in labor, did Ms. Turensky ever make a statement such as she didn't want you to have medication, she wanted you to be in pain, anything like that?

A: No.

(Nelson deposition, pp. 99-100).

As ADC Defendants have previously acknowledged regarding an Eighth Amendment violation, the Court has held that "any constitutional deprivation must demonstrate egregious conduct by the state official to sustain such a finding." *Porth v Farrier* 934 F.2d 154, 156 (8th Cir. 1991). Further, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). Where a prison security measure is undertaken, the question of whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort, or maliciously and sadistically for the very purpose of causing harm.

Plaintiff has failed to present facts that the actions taken by ADC Defendant Turensky were egregious whatsoever. Further, Plaintiff's own testimony is void of any evidence that Defendant Turensky acted either maliciously or sadistically in her actions. According to the Plaintiff, Defendant Turensky removed the leg restraints every time she was asked to by the nursing staff (Nelson Deposition, p. 81). Further, according to the Plaintiff's own words, as soon as Dr. Hergenroeder requested the leg restraints to be removed, Defendant Turensky complied with his request. (Nelson deposition, p.44) In addition, Dr. Hergenroeder's request was admittedly made prior to Plaintiff going to the

delivery room and giving birth to a 9 lb 7 ¾ oz baby. (Nelson deposition, p. 44). Defendant Turensky was following the orders as they related to her job.

Plaintiff also testified that there was never any mention of Defendant Turensky wanting Plaintiff to be in any pain. (Nelson deposition, pp. 99-100). Plaintiff does not allege that Defendant Turensky ever instructed the medical staff not to provide the Plaintiff with pain medication. For reasons wholly outside the control or authority of Defendant Turensky, by the time the Plaintiff was examined at the hospital on whether or not she could receive an epidural, she was unable to receive one.

It is clear that the actions of Defendant Turensky, as stated by the Plaintiff herself, do not establish egregious, malicious, or sadistic behavior. Because Defendant Turensky was following the orders of her job post, which adhered to the constitutional policies of the ADC, she cannot be found liable for having violated Plaintiff's Eighth Amendment constitutional rights.

### III. The Court Erred in Not Granting ADC Defendants Larry Norris and Patricia Turensky Qualified Immunity

As the Court properly stated, the threshold question considered with regard to granting qualified immunity, is whether, taken in the light most favorable to the party asserting the defense, the facts alleged establish the violation of a constitutional right. This must be the initial inquiry. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). If a constitutional violation could be made out, the next sequential step is to ask whether the right was clearly established. This inquiry must be undertaken on a very specific level, in light of the particular context of the case. *Id*.

In its Proposed Findings and Recommendations, the Court identifies the critical question in determining the applicability of qualified immunity to be whether reasonable officials in Defendants' positions would have known that shackling Plaintiff's legs to a bed post while she was in labor, without regard to whether she posed a security or flight risk, violated her Eighth Amendment rights. (DE 68, p. 21). The Court further opined that it simply could not say that reasonable officials in Defendants' positions, or any individual for that matter, reasonable or not, would have not known that the use of shackles in this situation violated Plaintiff's Eighth Amendment rights. (DE 68, p. 22).

Pregnant or not, on September 30, 2003, Plaintiff was an inmate of the Arkansas Department of Correction. She was sentenced to serve a period of time by a Pulaski County Circuit Court Judge, who had the option at the time of handing down his verdict, to sentence the Plaintiff to probation, or some other form of punishment. The judge exercised his discretion and deliberately chose to sentence the Plaintiff to incarceration within the ADC. The Defendants did not sentence her to the ADC. Further, as a prisoner of the ADC, pregnant or not, the number one priority is that of safety – safety of the inmates, as well as the safety of the officers. Plaintiff's pregnancy did not absolve that priority.

Based upon the Plaintiff's own testimony, it is clear that Defendant Turensky followed the Post Order with regard to her use of the restraints. Plaintiff has not provided, nor will she be able to provide, evidence that Defendant Turensky's intentions were anything other than to follow the ADC's policies. Plaintiff has not provided one scintilla of evidence that Defendant Turensky intended to cause the Plaintiff harm, or that she intended to violate the Plaintiff's constitutional rights. The same is to be said for

Defendant Larry Norris. Defendants Turensky and Norris are undoubtedly entitled to Qualified Immunity.

## IV. ADC Defendants Response to Plaintiff's Objections to Proposed Findings and Recommended Partial Disposition.

A.      ADC Defendants dispute Plaintiff's first objection and state the Court was correct when it ruled that Dr. Cynthia Frazier's affidavit of proposed testimony does not create an issue of fact as to whether or not CMS' procedure related to childbirth establishes deliberate indifference.

B.      ADC Defendants dispute that Dr. Frazier should be allowed to testify on Plaintiff's remaining claims, even if CMS' motion for summary judgment is granted. Dr. Frazier's affidavit contains two sentences regarding a woman being in shackles. In her affidavit, Dr. Frazier states" It is my opinion, to a reasonable degree of medical certainty, that it is inherently dangerous to both the mother and the unborn fetus to have a woman shackled during the final states of labor. During the final states of labor, it is important to the delivering physician to be able to move quickly and to act quickly, in order to avoid potentially life-threatening emergencies for both the mother and the unborn fetus."

Plaintiff seeks to have Dr. Frazier testify that shackling constitutes cruel and unusual punishment. The phrase "cruel and unusual punishment" is a legal term, for which Dr. Frazier is not qualified to define for a jury. Further, Plaintiff has not established a foundation which would to qualify Dr. Frazier in penological conditions.

In addition, Dr. Frazier has no first-hand knowledge as to what occurred at the hospital while the Plaintiff was in labor. She has no personal knowledge as to

whether or not Plaintiff was actually placed in shackles in the hospital, or how long the shackles were allowed to remain on the Plaintiff. She further is not being asked to opine whether the Plaintiff being in shackles caused Plaintiff's alleged injury to her hip.

With regard to Plaintiff's alleged injuries, she claims an injury to her left hip. In her deposition, Plaintiff testified that although she asked for anesthesia prior to delivery, she was told (by medical staff) that she was too far advanced in her labor to be able to have an epidural. (Nelson deposition, p. 48). Plaintiff also testified that she asked to have a caesarian after the doctor informed her she was having such a large baby. (Nelson deposition, p. 48). Further, Plaintiff testified that she developed an umbilical hernia from straining to deliver the 9 lb 7 ¾ oz baby (Nelson deposition, p. 55) and that a specialist she sought treatment from after her release from the ADC, Dr. Newbern, told her that her hips never went back into place after having a large baby. (Nelson deposition, p. 59).

ADC Defendants assert that Plaintiff will be unable to establish that any injury she may have sustained to her left hip on September 30, 2003 was caused by her being restrained to her bed prior to entering the deliver room and not due to her delivering a 9 lb 7 ¾ oz baby via natural childbirth.

C.     ADC Defendants third Objection and stated that the Court properly recommended dismissal ADC Defendant Mobley.

# V. CONCLUSION

ADC Defendants respectfully request this Court grant ADC Defendants Summary Judgment as to all respects, and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

DUSTIN McDANIEL
Attorney General

By: /s/ Christine A. Boozer
Arkansas Bar No. 2001082
Assistant Attorney General
Attorney for ADC Defendants
323 Center Street, Suite 20
Little Rock, Arkansas 72201
(501) 683-0958
Fax: (501) 682-2591
christine.boozer@arkansasag.gov

CERTIFICATE OF SERVICE

I, Christine A. Boozer, Assistant Attorney General, do hereby certify that on this 8th day of June, 2007, I electronically filed the forgoing with the Clerk of the Court using the CM/ECF system. Notification will be sent electronically to the following CM/ECF participants:

Ms. Cathleen V. Compton     vselle@swbell.net

Mr. Alan Humphries          ahumphrieshl@sbcglobal.net

By: /s/ Christine A. Boozer
Arkansas Bar No. 2001082
Assistant Attorney General
Attorney for ADC Defendants
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 683-0958
Fax: (501) 682-2591
christine.boozer@arkansasag.gov